[No. B141041. Second Dist., Div. Four. June 22, 2001.]

In re the Marriage of DENISE and THOMAS ROSSI.
DENISE ROSSI, Appellant, v.
THOMAS ROSSI, Respondent.

**COUNSEL**

Michael J. Berger for Appellant.

Claudia Ribet; Phillips, Lerner & Lauzon and Marc Lerner for Respondent.

**OPINION**

**EPSTEIN, J.**—Denise Rossi appeals from a postjudgment order in this dissolution case, awarding all the lottery winnings concealed by Denise

during the dissolution proceedings to her ex-husband, Thomas Rossi.[1] Her argument is twofold: that Thomas had unclean hands and therefore was not entitled to a share of the lottery prize, and that her conduct did not meet the statutory definition for the penalty because she believed the prize to be her separate property.

We conclude that the family court's findings that Denise intentionally concealed the lottery winnings from Thomas and that her conduct constituted fraud within the meaning of Civil Code section 3294 are supported by substantial evidence and that there was no abuse of the court's discretion.

FACTUAL AND PROCEDURAL SUMMARY

Denise and Thomas were married in 1971. In early November 1996, Bernadette Quercio formed a lottery pool with a group of her coworkers, including Denise. Each member of the pool contributed $5 per week. Denise contributed her $5 for a short time—three weeks—but, according to her papers, on December 1, 1996, or about that date, she withdrew from the pool.

In late December 1996, Ms. Quercio called Denise to say that their group had won the lottery jackpot. The jackpot prize was $6,680,000 and Denise's share was $1,336,000, to be paid in 20 equal annual installments of $66,800 less taxes, from 1996 through 2015. According to declarations by Denise and by Ms. Quercio, Ms. Quercio told her that she wanted to give Denise a share in the jackpot as a gift. Denise explained: "I was afraid to tell [Thomas] because I knew he would try to take the money away from me. I went to the Lottery Commission office and told them I was married but contemplating divorce. They told me to file before I got my first check, which I did. I believed that the lottery winnings were my separate property because they were a gift." In early January 1997, Denise filed a petition for dissolution of marriage in the Los Angeles Superior Court. She never told Thomas about the lottery jackpot. She used her mother's address to receive checks and other information from the California Lottery because it would be safer since Thomas would not see the lottery checks.

Thomas was served with the dissolution petition in January 1997. He and Denise talked about a settlement the same day. Thomas was not represented

---

[1] "We refer to the parties by their first names 'to humanize a decision resolving personal legal issues which seriously affect their lives,' and to make our opinion easier to understand. [Citation.]" (*In re Marriage of Hokanson* (1998) 68 Cal.App.4th 987, 990, fn. 2 [80 Cal.Rptr.2d 699].) The record is inconsistent as to the parties' last names, reflecting either "Rossi" or "De Rossi." We use "Rossi," which is the name on the caption of the order from which the appeal is taken.

by counsel in the dissolution proceedings. He and Denise met with Denise's attorney. According to Thomas, he was given several papers to sign to finalize the dissolution. These included a marital settlement agreement and a judgment of dissolution. There is a dispute between the parties about the actual date of separation and why the date of separation was listed as June 27, 1994.

Denise filled out a schedule of assets and debts dated January 27, 1997; a final declaration of disclosure; and an income and expense declaration dated January 30, 1997. She did not reveal the lottery winnings in any of these documents, either as community or separate property. Because Thomas did not have an attorney, Denise also filled out Thomas's schedule of assets and debts.

The marital settlement agreement was approved as part of the judgment of dissolution. Paragraph 9.1 of the marital settlement agreement is a warranty about disclosure of assets: "Each party warrants to the other that prior to the effective date of this Agreement neither was possessed of any property of any kind or description whatsoever other than the property specifically mentioned in this Agreement, and that such party has not made, without the knowledge and consent of the other, any gift or transfer of any property within the past three years. *If it shall hereafter be determined by a Court of competent jurisdiction that one party is now possessed of any property not set forth herein . . . such party hereby covenants and agrees to pay to the other on demand an amount equal to the full market value of such property on the date hereof or on the date of judgment in any action to enforce the provisions of this paragraph.*" (Italics added.)

Paragraph 9.4 of the marital settlement agreement also relates to disclosure of assets: "Each party has fairly and with candor disclosed all of the property in which either has a claim or interest, *whether or not the claim or interest is separate or joint property.* Each party has fully disclosed to the other the nature and extent of any interest in all property and warrants that its valuation is, to the best knowledge of that party, a fair and candid valuation and that there have been no events which would materially affect the value of any property." (Italics added.) Finally, paragraph 9.7 of the marital settlement agreement provides: "The parties have no separate property other than what he or she has earned or accumulated after separation. Those items, if any, are specifically set forth in Exhibits 'A' and 'B.'" The lottery winnings are not listed on the schedules attached to the marital settlement agreement. Denise testified that the lottery winnings were not listed on the schedules.

The marital settlement agreement also provided that concealment of assets was a basis to seek to set aside the agreement and that the party who was

wronged by the concealment could seek payment of one-half of the concealed property or its value plus one-half of any income derived from the property. (Par. 9.8.)

Judgment of dissolution was entered April 7, 1997. In 1998, Thomas filed for bankruptcy. In May 1999, a letter was sent to Thomas's home address, asking if Denise was interested in a lump-sum buyout of her lottery winnings. This was the first Thomas knew about the lottery prize. He confirmed that Denise was a winner with the California Lottery. Thomas retained counsel, who contacted Denise's attorney. According to a declaration filed by Thomas's counsel, Denise's attorney confirmed that she had won a share of a lottery prize, "however, his client was unwilling to share any 'meaningful' amount of the Lottery proceeds . . . ." In July 1999, Denise withdrew $33,000 in lottery winnings to repay a loan made by her mother in 1980.

In July 1999, Thomas filed a motion to set aside the dissolution of marriage based on fraud, breach of fiduciary duty and failure to disclose; for adjudication of the lottery winnings as an omitted asset; and sought the award of 100 percent of the lottery winnings pursuant to Family Code section 1101, subdivision (h).[2] Thomas also sought an award of his attorney's fees under section 1101, subdivision (g). Thomas sought ex parte orders for an accounting and a restraining order preventing the disposition of any of the lottery proceeds paid to Denise or of any assets obtained with lottery proceeds.

The trial court ordered an accounting of lottery proceeds received by Denise; restrained the disposition of lottery proceeds; and ordered that all lottery proceeds be placed in a money market account with no right of withdrawal without court order or joint consent of Thomas and Denise, except in the ordinary course of business or for necessities of life. Thomas's original order to show cause was taken off calendar to allow for discovery. The restraining order remained in effect by stipulation. In October 1999, Thomas filed a new motion on the same grounds, seeking the lottery proceeds. This motion was supported by declarations and excerpts of Denise's deposition. She testified at deposition that it was her intent that Thomas not get any of the lottery winnings.

In his points and authorities, Thomas asked the court to enforce the disclosure penalty provision of the judgment of dissolution, provision "E," which provides that if the court determined that one party failed to disclose property in the dissolution proceedings, that party would pay "at least one-half of the full market value of such property" to the other party. Based

---

[2] All statutory references are to the Family Code unless otherwise indicated.

on this provision, Thomas claimed at least half of the lottery winnings. In the alternative, Thomas asked the court to set aside the dissolution based on concealment and breach of fiduciary duty. Alternatively, Thomas sought an award of 100 percent of the lottery winnings pursuant to section 1101, subdivision (h), which penalizes a breach of fiduciary duty by a spouse in dissolution proceedings. As a final alternative ground, Thomas argued the lottery proceedings should be adjudicated an omitted asset pursuant to section 2556.

Denise moved to vacate the restraining order, based on Thomas's failure to provide discovery. In a supporting declaration, she described her troubled marriage and Ms. Quercio's gift to her of a share of the lottery winnings. In the alternative, she asked the court to set aside the dissolution on the basis of Thomas's fraud regarding the condition of the family home, which Denise received in the dissolution. She claimed that Thomas had failed to disclose a $100,000 equalization payment received in the dissolution when he subsequently filed for bankruptcy. Denise asserted the lottery winnings are her separate property because the share she received was a gift, and because the parties were already separated when the group hit the jackpot. Thomas filed a response, reiterating his arguments in support of an order awarding him the lottery proceeds.

The trial court found that Denise intentionally failed to disclose her lottery winnings in the marital settlement agreement, the judgment, and her declaration of disclosure. It found that Denise breached her fiduciary duties under Family Code sections 721, 1100, 2100, and 2101 by fraudulently failing to disclose the lottery winnings and that she intentionally breached her warranties and representations set forth in paragraphs 9.1, 9.4 and 9.7 of the marital settlement agreement. The court specifically found that Denise's failure to disclose the lottery winnings constituted fraud, oppression and malice within the meaning of Civil Code section 3294 and Family Code section 1101, subdivision (h). The trial court awarded Thomas 100 percent of the lottery winnings pursuant to provision E of the judgment of dissolution, paragraph 9.1 of the marital settlement agreement, and Family Code section 1101, subdivisions (g) and (h).

The trial court found that Denise's evidence that her share of the lottery winnings was a gift was not credible, and concluded that the lottery winnings were community property. Denise's motion to vacate the restraining orders and the cross-motions to strike portions of declarations were denied. The court ordered each party to bear his or her own costs. Denise filed a timely notice of appeal.

DISCUSSION

■ We review factual findings of the family court for substantial evidence, examining the evidence in the light most favorable to the prevailing party. (*In re Marriage of Hokanson, supra,* 68 Cal.App.4th at p. 994.) " ' "In reviewing the evidence on . . . appeal all conflicts must be resolved in favor of the [prevailing party], and all legitimate and reasonable inferences indulged in [order] to uphold the [finding] if possible." ' [Citation.]" (*In re Marriage of Bonds* (2000) 24 Cal.4th 1, 31 [99 Cal.Rptr.2d 252, 5 P.3d 815].) Because Civil Code section 3294 requires proof by "clear and convincing evidence" of fraud, oppression, or malice, we must inquire whether the record contains " 'substantial evidence to support a determination by clear and convincing evidence . . . .' " (*Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.* (2000) 78 Cal.App.4th 847, 891 [93 Cal.Rptr.2d 364].)

The court found that Denise intentionally concealed her lottery winnings during the dissolution proceedings and that her conduct constituted fraud, oppression, and malice within the meaning of Civil Code section 3294 and Family Code section 1101, subdivision (h). On that basis, it awarded Thomas 100 percent of the winnings.

Section 721, subdivision (b) imposes a fiduciary duty on spouses in transactions between themselves: "This confidential relationship imposes a duty of the highest good faith and fair dealing on each spouse, and neither shall take any unfair advantage of the other. This confidential relationship is a fiduciary relationship subject to the same rights and duties of nonmarital business partners, as provided in Sections 15019, 15020, 15021, and 15022 of the Corporations Code, . . ."

Section 1101, subdivision (h) provides: "Remedies for the breach of the fiduciary duty by one spouse when the breach falls within the ambit of Section 3294 of the Civil Code shall include, but not be limited to, an award to the other spouse of 100 percent, or an amount equal to 100 percent, of any asset undisclosed or transferred in breach of the fiduciary duty."

Thomas argues that imposition of the 100 percent penalty under section 1101, subdivision (h) was mandatory, once the family court found that Denise acted with fraud, oppression or malice in concealing the lottery winnings during the dissolution proceedings.

■ The correctness of the family court's order awarding Thomas all of the lottery winnings is based on the finding that Denise's conduct constituted

fraud within the meaning of Civil Code section 3294. Civil Code section 3294 provides in pertinent part: "(a) In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant. [¶] . . . [¶] (c) As used in this section, the following definitions shall apply: [¶] (1) 'Malice' means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others. [¶] (2) 'Oppression' means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights. [¶] (3) 'Fraud' means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury. . . ."

The evidence established that Denise filed for dissolution after learning that she had won a share of a substantial lottery jackpot; that she consulted the Lottery Commission personnel about ways in which she could avoid sharing the jackpot with her husband; that she used her mother's address for all communications with the Lottery Commission to avoid notifying Thomas of her winnings; and that she failed to disclose the winnings at any time during the dissolution proceedings, despite her warranties in the marital settlement agreement and the judgment that all assets had been disclosed. The family court expressly rejected her evidence that the winnings constituted a gift and, as such, were her separate property. The record supports the family court's conclusion that Denise intentionally concealed the lottery winnings and that they were community property.

Denise argues she committed no fraud because the statutory definition of that term "denotes conduct much more malicious and vile in nature than the failure of a physically and emotionally abused woman to disclose an asset to her husband, whose gambling and money mismanagement problems detrimentally affected her life and caused her to file for bankruptcy and caused him to threaten to kill her. In not disclosing what Denise Rossi believed was her separate property, Denise Rossi did not intend to deprive Respondent of an asset that he was entitled to because she felt it belonged to her alone. Denise Rossi did not believe that she was misappropriating a community asset, and therefore did not have the requisite fraudulent intent to deprive Respondent of a community asset."

The problem with her argument is that the court expressly found her evidence was not credible. The record supports this finding. The court put it

in the following clear terms: "I believe the funds used to purchase the ticket were community. I don't believe the story about the gift." The court expressly found that Denise intentionally failed to disclose her lottery winnings in the marital settlement agreement, the judgment and her declaration of disclosure. This case presents precisely the circumstance that Family Code section 1101, subdivision (h) is intended to address. Here, one spouse intentionally concealed a significant community property asset. She intentionally consulted with the Lottery Commission as to how to deprive Thomas of a share of the prize; used her mother's address for all communications with the lottery; and did not disclose the winnings in the dissolution proceedings. This supports a finding of fraud within the meaning of Civil Code section 3294. The family court properly concluded that under these circumstances, Thomas was entitled to 100 percent of the lottery winnings under Family Code section 1101, subdivision (h).

As we observed in *In re Marriage of Hokanson, supra*, 68 Cal.App.4th at page 993: "The clear import of the language in subdivision (h) is that an award of attorney fees is discretionary, over and above the mandatory award of the entire asset at issue." The strong language of section 1101, subdivision (h) serves an important purpose: full disclosure of marital assets is absolutely essential to the trial court in determining the proper dissolution of property and resolving support issues. The statutory scheme for dissolution depends on the parties' full disclosure of all assets so they may be taken into account by the trial court. A failure to make such disclosure is properly subject to the severe sanction of section 1101, subdivision (h).

In light of this conclusion, we need not consider the alternative grounds that Denise's conduct constituted malice and oppression under Civil Code section 3294. This conclusion also disposes of Denise's alternative argument that Thomas should have received only 50 percent of the concealed lottery winnings pursuant to Family Code section 1101, subdivision (g), which applies when a spouse's breach of fiduciary duty does not constitute fraud, oppression or malice under Civil Code section 3294.

We find nothing in the language of the statute to justify an exception to the penalty provision of Family Code section 1101, subdivision (h) because of the supposed unclean hands of the spouse from whom the asset was concealed. Nor are we cited to legislative history which would suggest such an exception. None of the cases cited by Denise in support of her unclean hands defense are family law cases construing Family Code section 1101. This undercuts Denise's primary argument on appeal, that she was justified in concealing the lottery winnings because of Thomas's behavior. The plain meaning of Family Code section 1101, subdivision (h) disposes of Denise's

argument that there should be a "downward departure in any remedy against Denise" because, as she claims, she was battered emotionally and physically by Thomas. She cites federal law to the effect that evidence of the battered woman's syndrome is a valid basis for a discretionary downward departure of criminal penalties otherwise applicable under federal criminal sentencing guidelines, and to California criminal cases addressing this syndrome. As we have discussed, no such exception is codified into Family Code section 1101. The cases cited are off point. The statute provides that, where a spouse conceals assets under circumstances satisfying the criteria for punitive damages under Civil Code section 3294, a penalty representing 100 percent of the concealed asset is warranted. The statute is unambiguous and no exception is provided.

Denise also argues that the order must be reversed because Thomas's attorneys will receive half of the lottery proceeds. Without citation of authority, she asserts that this is counter to the purpose of section 1101. But the plain language of section 1101, subdivision (h) demonstrates legislative intent to enforce the fiduciary obligations of spouses to one another in dissolution proceedings by imposing substantial penalties for breaches of that duty. The order of the family court in this case is consistent with that intent. We find no basis to reverse the order of the family court because of Thomas's fee arrangement.

The family court could have imposed attorney's fees on Denise as an additional penalty under Family Code section 1101, subdivision (h). It chose not to do so. It was within its discretion in making this order. (See *In re Marriage of Hokanson, supra,* 68 Cal.App.4th 987 [where breach of fiduciary duty by a spouse involves conduct *not* amounting to fraud, oppression, or malice within the meaning of Civ. Code, § 3294, an award of fees is mandatory, in contrast with the discretionary fee provision of Fam. Code, § 1101, subd. (h)].)[3]

The evidence which we have summarized supports the family court's order on the alternative ground that Denise violated the terms of the judgment of dissolution and the marital settlement agreement by concealing the lottery winnings. This violation triggered paragraph 9.1 of the marital settlement agreement: "Each party warrants to the other that prior to the effective date of this Agreement neither was possessed of any property of any kind or

---

[3]Section 1101, subdivision (g) provides: "Remedies for breach of the fiduciary duty by one spouse as set out in Section 721 shall include, but not be limited to, an award to the other spouse of 50 percent, or an amount equal to 50 percent, of any asset undisclosed or transferred in breach of the fiduciary duty plus attorney's fees and court costs. However, in no event shall interest be assessed on the managing spouse."

description whatsoever other than the property specifically mentioned in this Agreement, and that such party has not made, without the knowledge and consent of the other, any gift or transfer of any property within the last three years. *If it shall hereafter be determined by a Court of competent jurisdiction that one party is now possessed of any property not set forth herein . . . such party hereby covenants and agrees to pay to the other on demand an amount equal to the full market value of such property on the date hereof or on the date of judgment in any action to enforce the provisions of this paragraph."* (Italics added.)

## DISPOSITION

The order of the family court is affirmed. Respondent is to have his costs on appeal.

Vogel (C. S.), P. J., and Hastings, J., concurred.