Filed 10/22/20  Marriage of Turner CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| In re the Marriage of JOYCE AND GARRY TURNER. | |
| JOYCE ANN TURNER, | E071949 |
| Respondent, | (Super.Ct.No. FAMRS1303424) |
| v. | OPINION |
| GARRY ALLEN TURNER, | |
| Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  James J. Hosking, Judge.  Affirmed with directions.

Law Office of Corey Evan Parker and Corey Evan Parker for Appellant.

Joyce Ann Turner, in pro. per., for Respondent.

## I.

## BACKGROUND

The parties, Garry Turner and Joyce Ann Turner, were married in 1980 and separated in October 2013. Mrs. Turner filed for divorce a month later.

Mr. Turner kept several things secret from Mrs. Turner during their marriage. He had an affair and child with another woman. He loaned his brother about $83,000 without telling Mrs. Turner. Forty-five thousand dollars of the loans were to help Mr. Turner's brother's business, and the remaining $38,000 in loans went toward his brother's and sister-in-law's medical bills and living expenses. Mr. Turner also let his brother and sister-in-law live rent free for eight years in the Turners' rental property in Texas while leading Mrs. Turner to believe that they had renters who were paying rent the entire time. In 2012, Mr. Turner took out an auto loan to buy a $14,000 BMW without Mrs. Turner's knowledge. Mrs. Turner did not know about the BMW until she checked the couple's credit report during the divorce proceedings and discovered Mr. Turner had obtained an auto loan for the vehicle.

After a bench trial on the division of the marital property and spousal support arrearages, the trial court ruled that Mr. Turner was liable to Mrs. Turner for (1) the $83,000 he loaned his brother, (2) $115,000 in "imputed rent" from the couple's Texas property, and (3) the $14,000 he spent on the BMW. Mr. Turner appeals these rulings, as well as the trial court's order directing him to pay $6,299.50 in unpaid child and spousal support. Mr. Turner also asks us to remand the matter and direct the trial court to correct

a clerical error in the judgment.  We modify the judgment to correct the clerical error.  As modified, we affirm the judgment.

II.

DISCUSSION

A. *Standard of Review*

We review the trial court's judgment dividing marital property for an abuse of discretion, and therefore reverse only if its decision is not supported by substantial evidence.  (*In re Marriage of Dellaria & Blickman–Dellaria* (2009) 172 Cal.App.4th 196, 201.)   We review the entire record in the light most favorable to the prevailing party to determine whether there is substantial evidence to support the trial court's findings, and resolve all conflicts in the evidence and draw all reasonable inferences in favor of the findings.  (*In re Marriage of Drake* (1997) 53 Cal.App.4th 1139, 1151.)

"When a trial court's factual determination is attacked on the ground that there is no substantial evidence to sustain it, the power of an appellate court begins and ends with the determination as to whether, on the entire record, there is substantial evidence, contradicted or uncontradicted, which will support the determination, and when two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the trial court.  If such substantial evidence be found, it is of no consequence that the trial court, believing other evidence, or drawing other reasonable inferences, might have reached a contrary conclusion.  [Citations.]" (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 873-874, italics omitted.)

B. *$83,000 Loaned to Mr. Turner's Brother*

Family Code section 721, subdivision (b) "imposes a duty of the highest good faith and fair dealing on each spouse" with respect to the management and control of community property. Family Code section 1101, subdivision (a) provides that "[a] spouse has a claim against the other spouse for any breach of the fiduciary duty that results in impairment to the claimant spouse's present undivided one-half interest in the community estate." If the spouse breaches his or her duty through oppression, fraud, or malice, then the remedies for that breach "shall include, but not be limited to, an award to the other spouse of 100 percent, or an amount equal to 100 percent, of any asset undisclosed or transferred in breach of the fiduciary duty." (Fam. Code, § 1101, subd. (h); *In re Marriage of Hokanson* (1998) 68 Cal.App.4th 987, 992.)

The trial court found that Mr. Turner breached his fiduciary duty to Mrs. Turner "by diverting funds" to his brother without telling Mrs. Turner. Mr. Turner does not dispute that he loaned his brother $83,000 without Mrs. Turner's knowledge or that he breached his fiduciary duty under Family Code section 721, subdivision (b) in doing so. Instead, Mr. Turner argues the trial court should not have awarded Mrs. Turner $83,000 because (1) he loaned his brother that amount through cash advances from credit cards and his brother fully repaid the loans, and (2) Mrs. Turner was not entitled to the entire $83,000 sum because the trial court did not find by clear and convincing evidence that he was guilty of oppression, fraud, or malice, as required by Family Code section 1101, subdivision (h). We disagree.

4

It is unclear whether Mr. Turner asserts that the fact that his loans to his brother allegedly came from credit card advances is material, although he testified that the advances did not constitute community funds. To the extent he argues the credit card advances were not community property, he has forfeited the argument by failing to support it with any reasoned argument or authority. (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785 [argument forfeited on appeal if not supported with reasoned argument and citations to authority].) Regardless, on this record, we would reject it on the merits. There is no indication in the record that the credit cards were not community property. Moreover, Mr. Turner does not dispute that he breached his fiduciary duty by loaning his brother money without disclosing the loans to Mrs. Turner. (See *In re Marriage of Fossum* (2011) 192 Cal.App.4th 336, 347 [wife breached fiduciary duty to husband by accruing $24,000 in credit card debt without disclosing the debt to husband].)

As Mr. Turner conceded in the trial court and again concedes on appeal, his contention that his brother repaid the loans in full is not supported by anything other than his testimony, which the trial court found credible only "at times" while "severely lacking credibility" at other times. Given the lack of any evidence corroborating Mr. Turner's testimony, the trial court's concerns with Mr. Turner's credibility, and its awarding Mrs. Turner $83,000 for funds Mr. Turner "diverted to his brother," we infer that the trial court found that Mr. Turner's brother did not repay the loans. (See *Fladeboe v. American Isuzu Motors, Inc.* (2007) 150 Cal.App.4th 42, 48 ["Under the doctrine of implied findings, the reviewing court must infer, following a bench trial, that the trial court impliedly made

5

every factual finding necessary to support its decision."].)  The trial court could have reasonably found that the $83,000 in loans not repaid given Mr. Turner's lack of credibility and the absence of any evidence corroborating his testimony that the loans were repaid.  (See *Davis v. Kahn* (1970) 7 Cal.App.3d 868, 874 [trial court is "sole judge" of witness credibility in a bench trial].)

Nor did the trial court err by awarding Mrs. Turner the full $83,000.  As Mr. Turner correctly notes, the trial court was permitted to award Mrs. Turner the entire sum if it found by clear and convincing evidence that Mr. Turner committed his undisputed breach of fiduciary duty in loaning the money to his brother through oppression, fraud, or malice.  (Fam. Code, § 1101, subd. (h); Civ. Code § 3294, subd. (a); *In re Marriage of Murray* (2002) 101 Cal.App.4th 581, 603 [affirming trial court's award of entire asset to wife because of husband's fraud].)  Mr. Turner argues, however, that the trial court "did not come close to making such a finding."

Although the trial court did not explicitly find that Mr. Turner acted with oppression, fraud, or malice, Mr. Turner does not cite, and we cannot find, any authority that suggests the trial court was required to do so.  In any event, we presume findings in favor of the trial court's judgment.  Our role is to determine whether the record contains substantial evidence to support such a finding by clear and convincing evidence. (*Marriage of Rossi* (2001) 90 Cal.App.4th 34, 40; accord, *Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.* (2000) 78 Cal.App.4th 847, 891 ["the jury award of

6

punitive damages must be upheld if . . . the record contains 'substantial evidence to support a determination by clear and convincing evidence'"].)

The record overwhelmingly supports the trial court's implied finding that Mr. Turner breached his fiduciary duty through fraud. It is undisputed that Mr. Turner loaned his brother $83,000 over the course of several years without telling Mrs. Turner. Mr. Turner does not suggest that he did so unintentionally. Deliberately concealing or omitting a material fact is fraud. (Civil Code § 3294, subd. (c)(3); see *In re Marriage of Rossi*, *supra*, 90 Cal.App.4th at p. 41 [affirming trial court's findings that "wife intentionally concealed the lottery winnings and that they were community property" and "that her conduct constituted fraud"].) Thus, there is substantial evidence in the record to support the trial court's implied finding that Mr. Turner acted with fraud by loaning his brother community funds without Mrs. Turner's knowledge or consent. In fact, we conclude the record conclusively shows that Mr. Turner acted with fraud by deliberately failing to tell Mrs. Turner about the loans. The trial court therefore properly awarded Mrs. Turner the full $83,000 for the loans (i.e., community funds) that Mr. Turner gave to his brother without Mrs. Turner's knowledge or consent in breach of his fiduciary duty to her. (Fam. Code, § 1101, subd. (h) [remedies for breach of fiduciary duty "*shall include* . . . an award to the other spouse of 100 percent . . . of any asset . . . transferred in breach of the fiduciary duty"].)

C. *Imputed Rent*

The trial court awarded Mrs. Turner $115,000 for "Imputed Rental Income" for the Turners' Texas rental property. Although the trial court did not explain how it came to this figure, the parties agree it represents just under eight years of $1,200-per-month mortgage payments, which reflects the amount of time Mr. Turner's brother and sister-in-law lived in the property rent-free. Mr. Turner does not challenge the trial court's calculation or that an award related to the lost rent was proper. Instead, he argues that the trial court's awarding Mrs. Turner 100 percent of the lost rental income was inappropriate because "the court again did not make the necessary finding to award a punitive amount of 100 percent to Mrs. Turner" under Family Code section 1101, subdivision (h) or Family Code section 2602.[1] We disagree.

Mr. Turner does not dispute the trial court's finding that he breached his fiduciary duty to Mrs. Turner by allowing his brother and sister-in-law to live in the Texas property rent-free for eight years without telling Mrs. Turner. He argues, however, that the trial court "did not make the necessary finding to award a punitive amount of 100 percent" of the lost rent to Mrs. Turner. As outlined above, the trial court was not required to explicitly find by clear and convincing evidence that Mr. Turner breached his fiduciary duty through fraud, oppression, or malice. Regardless, we must affirm the trial court's

---

[1] Family Code section 2602 provides that, "[a]s an additional award or offset against existing property, the court may award, from a party's share, the amount the court determines to have been deliberately misappropriated by the party to the exclusion of the interest of the other party in the community estate."

award if there is substantial evidence that Mr. Turner breached his fiduciary duty through fraud, oppression, or malice.

We conclude there is overwhelming evidence that Mr. Turner acted with fraud. Mr. Turner did not tell Mrs. Turner that his brother and sister-in-law were living in their Texas property, much less that they were living there rent-free. It is therefore undisputed that Mrs. Turner was unaware of the situation. Moreover, Mrs. Turner testified that Mr. Turner falsely told her that they had "'good tenants'" who timely paid rent and took "good care of the house," and described them as a couple with professional careers. The record therefore contains substantial evidence that Mr. Turner deliberately misled Mrs. Turner about the Texas rental property, concealed the fact that it was not generating rental income as Mrs. Turner expected, and intentionally misled her about who their tenants were. Accordingly, there is substantial evidence to support the trial court's implied finding that, with regard to the Texas rental property, Mr. Turner breached his fiduciary duty to Mrs. Turner through fraud. On this record, that is the only reasonable conclusion. The trial court therefore properly awarded Mrs. Turner 100 percent of the "imputed rent" for the Texas rental property.[2] (See *In re Marriage of Fossum*, *supra*, 192 Cal.App.4th at pp. 347-348 fn. 7 [award of entire asset to husband proper where wife breached fiduciary duty to husband by not disclosing debt incurred for asset]; *In re*

---

[2] Because the trial court's award was proper under Family Code section 1101, we need not address Mr. Turner's argument that the award was improper under Family Code section 2602 because Mr. Turner did not "deliberately misappropriate[]" funds associated with the Texas rental property.

*Marriage of Rossi*, *supra*, 90 Cal.App.4th at p. 40 [affirming award of all of wife's lotto winnings that she concealed from husband].)

    D. *BMW*

The trial court awarded Mrs. Turner $14,000 for the BMW that Mr. Turner bought "for his child's mother" without Mrs. Turner's knowledge. Mr. Turner contends the trial court erred in doing so because the present value of the BMW at trial was $4,500. Mr. Turner also contends there was insufficient evidence to support the trial court's finding that he purchased the BMW for his child's mother.

It is undisputed that Mrs. Turner did not know about the BMW when he purchased it—before the parties separated—and that she did not learn about it until dissolution proceedings had begun. In fact, Mr. Turner admitted at trial that he intentionally did not tell Mrs. Turner about the BMW "because of the way [she] handle[s] [herself]" and because he "didn't want to have an argument" with her. The record therefore supports the trial court's implied finding that Mr. Turner purchased the BMW without Mrs. Turner's consent and then concealed it from her. That implied finding, in turn, supports the trial court's implied finding that Mr. Turner breached his fiduciary duty to Mrs. Turner by purchasing the BMW without her knowledge. (See Fam. Code, § 1100, subd. (e) [fiduciary duty to other spouse "includes the obligation to make full disclosure to the other spouse of all material facts and information regarding . . . assets in which the community has or may have an interest"]; *In re Marriage of Fossum*, *supra*, 192 Cal.App.4th at pp. 347-348 fn. 7 [wife breached fiduciary duty to husband by not

10

disclosing debt incurred for asset]; see also *In re Marriage of Simmons* (2013) 215 Cal.App.4th 584, 593 [explaining that Family Code section 1101, subdivision (h) provides remedy "when a spouse fails to disclose community property"].)  Because Mr. Turner conceded that he intentionally purchased the BMW without telling Mrs. Turner and deliberately concealed it from Mrs. Turner for over a year, the record confirms that Mr. Turner acted with fraud.  Whether Mr. Turner purchased the BMW for himself or for his child's mother is not dispositive because he "incurred the [auto loan] debt without disclosure to [Mrs. Turner], in violation of [his] fiduciary obligations to [her] and the provisions of [Family Code] section 721."  (*In re Marriage of Fossum*, *supra*, at p. 347.)

Family Code section 1101 does not limit the court to an award based on the asset's current value.  Instead, it provides that an asset may be valued at "its highest value at the date of the breach of the fiduciary duty."  (Fam. Code, § 1101, subd. (g).)  Because Mr. Turner breached his duty to Mrs. Turner when he purchased the BMW, the trial court was permitted to value the BMW at its purchase price, which reflected the BMW's value "at the date of the breach of the fiduciary duty."

### E.  Arrearages

The trial court ordered Mr. Turner to pay spousal support to Mrs. Turner twice a month.  The trial court subsequently found that Mr. Turner was about a month and a half ($6,299.50) in arrears on his spousal support to Mrs. Turner, and ordered him to pay the past due support immediately upon entry of judgment.  On appeal, Mr. Turner argues the trial court erred because he had previously paid the disputed half-month's spousal support

11

to Mrs. Turner ($2,339) in January 2014 and overpaid $427 in spousal support over the course of seven months, which he argued should be credited to offset what he still owes Mrs. Turner. Mr. Turner therefore contends the trial court's arrearages order should be reduced by $2,766.

As to the half-month spousal support payment, Mr. Turner argues it is not supported by substantial evidence because it was based on Mrs. Turner's testimony, which was "simply not reasonable or credible." To support his argument, he points to a "clearly confusing" exchange between the trial court. Mr. Turner argues the exchange shows that Mrs. Turner "contradicted herself repeatedly" by saying Mr. Turner had not paid half of his January 2014 spousal support payment, then later saying that he had not paid any of it.

We agree with Mr. Turner that the trial court's colloquy with Mrs. Turner is difficult to follow. But before it began, Mrs. Turner unambiguously told the trial court that "Mr. Turner owes me a total of [$]6,299.50 in arrears because Mr. Turner never paid me any arrears," and explained that the amount represented what Mr. Turner owed her in spousal support for December 2013 through July 2014. After Mrs. Turner's extended discussion with the trial court about Mr. Turner's arrearages, the trial court stated, "Your testimony is [Mr. Turner] owes you $6,299.50 total between child and spousal support arrears for December 1st, 2013, through July 1st, 2014." Mrs. Turner replied, "Yes, sir."

Beyond his own testimony, which the trial court generally found not credible, Mr. Turner does not cite any evidence that supports his argument or testimony that he paid

Mrs. Turner what she was due.  The trial court found Mrs. Turner "to be forthcoming and her testimony generally credible."  The court further explained:  "Where the court found her statements inaccurate, the court is convinced it was due to her misperception or misunderstanding of the facts, as opposed to an intentional misrepresentation."  Mrs. Turner's testimony as to what Mr. Turner owes her in overdue spousal support, which the trial court presumably found credible, constitutes substantial evidence that supports the trial court's ruling on Mr. Turner's arrearages.  (*In re Marriage of Mix* (1975) 14 Cal.3d 604, 614 [testimony of a single witness may constitute substantial evidence].)

As for the $427 in overpaid spousal support, Mrs. Turner testified that Mr. Turner gave her the extra money to help with their son's college expenses, not to pay for arrearages.  Mr. Turner, on the other hand, claimed that he overpaid spousal support due to an "attorney's errors calculating the support."  The resolution of the issue therefore turns on the parties' credibility.  As explained, the trial court found Mrs. Turner to be credible, while finding Mr. Turner's generally not credible.  We are bound by those credibility determinations.  (See *Davis v. Kahn*, *supra*, 7 Cal.App.3d at p. 874 [trial court is "sole judge" of witness credibility in a bench trial].)

We therefore conclude that Mrs. Turner's testimony about the $427 Mr. Turner overpaid provides substantial evidence that supports the trial court's implied finding that the $427 was not intended to offset Mr. Turner's arrearages.  In sum, the trial court's arrearages ruling is supported by substantial evidence, so we must affirm it.

F.  *Clerical Error*

In its judgment, the trial court erroneously awarded Mrs. Turner $86,000, instead of $83,000, for the funds Mr. Turner loaned his brother.  Mr. Turner asserts this was a clerical error, which Mrs. Turner does not dispute.  In fact, Mrs. Turner asks this court to "uphold the [trial court's] rulings concerning the community funds diverted to Mr. Turner's brother, with instructions to keep it at $83,000."  As explained above, the evidence showed that Mr. Turner loaned his brother at most $83,000.  We therefore conclude, as do the parties, that the $86,000 figure in the judgment is the result of a clerical error, not the exercise of the trial court's discretion.  (See *Bowden v. Green* (1982) 128 Cal.App.3d 65, 71 ["A clerical error in a judgment is an inadvertent one made by the court which cannot reasonably be attributed to the exercise of judicial consideration or discretion."].)

Without opposition from Mrs. Turner, Mr. Turner requests that we vacate the judgment and remand for the trial court to correct the clerical error.  We conclude the better course is to correct the judgment in this court.  (*Hennefer v. Butcher* (1986) 182 Cal.App.3d 492, 506-507 ["[A]n appellate court may correct a judgment containing an obvious clerical error or other defect resulting from inadvertence by modifying the judgment."].)  Accordingly, we modify the judgment to reflect that Mrs. Turner is awarded $83,000, not $86,000, for the funds Mr. Turner loaned his brother.

14

III.

DISPOSITION

The judgment is modified to award Mrs. Turner $83,000 for the funds Mr. Turner loaned his brother. As modified, the judgment is affirmed. Mrs. Turner shall recover her costs on appeal. We remand the matter to the trial court to enter the amended judgment consistent with this opinion.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

RAMIREZ
P. J.

RAPHAEL
J.

15