Filed 5/14/21  Marriage of Abdou and Malak CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| In re the Marriage of ATEF ABDOU and MARIAM ABDEL MALAK. | B304087 |
| | (Los Angeles County Super. Ct. No. BD559444) |
| ATEF ABDOU, Plaintiff and Appellant, v. MARIAM ABDEL MALAK, Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Shelley L. Kaufman, Judge.  Affirmed.

Koletsky, Mancini, Feldman & Morrow, Stephen C. Mancini and Suzy S. Marjanian for Plaintiff and Appellant.

Leslie L. Niven for Defendant and Respondent.

_____

Atef Abdou appeals from a judgment awarding his former spouse Mariam Abdel Malak damages and attorneys' fees and costs for his breach of fiduciary duty. Abdou contends the family court erred in characterizing his 100 percent interest in a business entity, United No. 1, LLC, and United's real property asset as community property. Further, Abdou argues he did not breach his fiduciary duty to Malak by transferring his interest in United to his mother because his mother owned the company and its real property and he managed the business for her. He also argues Malak was not harmed by the transfer because the property was underwater. Finally, Abdou contends the family court erred by not staying its decision until after resolution of Malak's quiet title action because adjudication of the quiet title action could result in duplicative awards. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

A. *The Marital Dissolution and Property Dispute*

Abdou and Malak were married on January 8, 2004. In February 2009 Malak filed a petition for dissolution of marriage. Abdou and Malak reconciled, and Malak dismissed her petition. The couple separated again on February 21, 2012. Abdou filed a petition for dissolution on February 22, 2012, and Malak filed a petition five days later. The family court consolidated the proceedings and deemed Malak's petition a response to Abdou's

---

[1] Our summary of the facts is based on the undisputed facts in the family court's July 30, 2019 statement of decision and trial testimony.

petition.[2]  The court entered a judgment dissolving the marriage on November 7, 2013.

On December 18, 2018 Malak filed a complaint to quiet title against United relating to real property located at 1303 S. Western Avenue in Los Angeles (1303 Western property).[3]  It is undisputed that United owns the 1303 Western property, which United purchased on September 7, 2004 for $1,438,372.  The property contains a gas station with a food center and a car wash.  Because Abdou held a 100 percent ownership interest in United at the time of the purchase, Abdou reported the 1303 Western property as an asset valued at the purchase price on his 2004 tax return.[4]

---

[2]  Malak sought to join Abdou's mother Sohei Youssef Moussa, Abdou's brother Adel Hanna, and various business entities, including United.  The family court granted Malak's request to join Moussa and Hanna, but not the entities.  Moussa brought two separate motions to quash service of the summons and complaint, both of which the family court granted.  Moussa was never served, and she died in Egypt in 2016.  Malak did not request to join Moussa's estate.

[3]  Malak did not file a notice of related cases until the trial had commenced in the marital dissolution action.  The superior court related the two cases on March 4, 2019 and consolidated the proceedings on June 24, 2019 (after the trial concluded but before the family court issued its final statement of decision).

[4]  Malak's forensic accountant, John Gustavson, testified that because United as a limited liability company had a single owner, it was "considered a disregarded entity for tax purposes," and therefore all activity with respect to the company was reported on Abdou's personal tax returns as the owner.  Gustavson did not clarify whether Abdou's 2004 tax return was filed separately or jointly with Malak.

Abdou admitted United was formed during his marriage to Malak. United made the loan payments on the 1303 Western property during the marriage. Beginning in 2005 Abdou and Malak reported the rental income and depreciation from the property on their joint tax returns. Gustavson, Malak's forensic accounting expert, testified Abdou and Malak's joint tax returns showed a rental cash flow of approximately $80,000 per year from the property. Further, Malak testified she went with Abdou to work at the gas station every day during her pregnancy.

Abdou testified the purchase of the 1303 Western property was "an investment that was done by" his mother Moussa. Gustavson confirmed Moussa wrote a $250,000 check that was deposited into escrow as a down payment for the purchase of the property. Abdou testified he did not borrow money from Moussa for the down payment, nor did Moussa gift him the money to acquire the property.

On January 12, 2010 Abdou signed a membership transfer agreement to transfer 90 percent of his interest in United to Moussa for $50,000. On January 3, 2011 Abdou transferred his remaining 10 percent interest in United to Moussa for $5,000. Gustavson testified Abdou and Malak's 2010 and 2011 joint tax returns reflected capital gains from the sale of United to Moussa. As of January 2010 the cash flow from the 1303 Western property to Abdou and Malak ceased.

B.    *The Statement of Decision*

After a trial, supplemental briefing, and the filing of objections, on July 30, 2019 the family court issued its final statement of decision. The court rejected Abdou's claim the 10 percent down payment United used to purchase the

4

1303 Western property came from Moussa's funds and was her investment. The court explained, "[Abdou] relies on his testimony . . . to support his claim that the money for United 1 to purchase the real property at 1303 Western 'came from' [his] mother. . . . The passages cited state solely that he did not borrow money from his mother, she did not gift money to him for the down payment, and he does not owe her any money. This testimony lacks reliability and credibility as to the true owner of United 1 and the source of the funds to purchase the real property at 1303 Western. The facts remain . . . at the time of the purchase of the real property by United 1, [Abdou] was the only member. Six years after the purchase of real property by United 1, which [Abdou] claims was owned by his mother, he transfers ownership to her. [Abdou's] claim is not credible."

The family court reasoned, "[Abdou's] conduct does not comport with his claim that 1303 Western was owned by his mother through the entity United 1. Why would he then execute a transfer agreement in 2010 and 2011 for remuneration from his mother if she was the actual owner? This transfer occurred shortly after [Malak] left the family home in 2009 and filed for dissolution. [Abdou] filed his response to the dissolution on March 11, 2009 and indicated that he was seeking to confirm as his separate property United 1, including all personal and real property assets. . . . Even if [Abdou's] mother provided money to [Abdou] for the down payment, there is insufficient evidence as to the characterization of this money, or that this establishes she was the owner of United 1, and not [Abdou]."

The family court found Abdou failed to rebut the presumption in Evidence Code section 662 that "[t]he owner of the legal title to property is presumed to be the owner of the full

beneficial title." The court stated, "The Court does not find sufficient credible evidence that United 1 belonged to [Abdou's] mother at the time of acquisition. [Abdou] has provided little to no documentary evidence of this claim other than his testimony."

The family court also found Abdou failed to rebut the presumption in Family Code section 760 that all real or personal property acquired during marriage is community property. The court explained, "The 1303 Western property was in fact acquired during marriage by United 1, wherein [Abdou] was the only member. In a reply argument, [Abdou] states if 1303 Western was his property through United 1, the ownership was only obtained from funds that were a gift from his mother, and thus should be deemed his separate property . . . . While testimony was provided that he received funds from his mother to be used for the down payment, [Abdou] did not provide further testimony as to how the loan payments were made or applied to the purchase of 1303 Western. [Abdou] had the burden to do the appropriate tracing if this was his claim; he did not. Further, Abdou admitted to working at the location, and managing the property. He used community efforts thus to maintain the property."

The family court concluded Malak met her burden to prove Abdou breached his fiduciary duty by selling his interest in United for less than the purchase price of the property. The court awarded Malak 50 percent of the equity in the 1303 Western property, explaining, "The community held an asset from date of marriage which had a value of more than one million dollars. By 2011, not for comparable value, the asset was sold. Pursuant to Family Code section 1101(g), [Malak] is entitled to 50% of the value of the transferred asset."

6

The family court determined that Abdou owed Malak $637,000 for his breach of fiduciary duty. The court based its award on the testimony of real estate appraiser James Willard and Gustavson.[5] Willard testified the property's value was $2,107,000 as of February 16, 2012 (the date of separation), and $3,160,000 as of December 12, 2018 (the date of his appraisal). Gustavson calculated the equity in the property as of December 12, 2018 was $1,274,000 by taking the current market value of the property ($3,160,000) less the current encumbrances reflected in the property records ($1,886,000). The court also awarded Malak $106,196 in attorneys' fees and costs pursuant to Family Code section 1101, subdivision (g), based on Abdou's breach of fiduciary duty.

C.    *Entry of Judgment and the Appeal*

On November 8, 2019 Abdou moved for a new trial, which the family court denied. On March 4, 2020 the court entered a judgment ordering Abdou to pay $637,000 to Malak for his breach of fiduciary duty and awarding Malak $106,196 in attorneys' fees and costs. Abdou timely appealed.[6]

---

[5]    The family court found Abdou's accounting expert, Jackie Adams-Ings, "did not assign a value to the loss of this property, asserting the property belonged to [Abdou's] mother."

[6]    Although Abdou filed his notice of appeal on February 6, 2020, before entry of judgment, we consider his premature notice of appeal a valid "notice of appeal filed after judgment is rendered but before it is entered." (Cal. Rules of Court, rule 8.104(d)(1).) We therefore treat the notice of appeal as filed immediately after entry of judgment. (*Ko v. Maxim Healthcare Services, Inc.* (2020) 58 Cal.App.5th 1144, 1149; *Valdez v. Seidner-Miller, Inc.* (2019) 33 Cal.App.5th 600, 607.)

7

**DISCUSSION**

A.    *Characterization of Property in a Martial Dissolution Proceeding*

"In a marital dissolution proceeding, a court's characterization of the parties' property—as community property or separate property—determines the division of the property between the spouses. [Citations.] Property that a spouse acquired before the marriage is that spouse's separate property. (Fam. Code, § 770, subd. (a)(1).) Property that a spouse acquired during the marriage is community property (*id.*, § 760) unless it is (1) traceable to a separate property source [citations], (2) acquired by gift or bequest (Fam. Code, § 770, subd. (a)(2)), or (3) earned or accumulated while the spouses are living separate and apart (*id.*, § 771, subd. (a))." (*In re Marriage of Valli* (2014) 58 Cal.4th 1396, 1399-1400; accord, *In re Brace* (2020) 9 Cal.5th 903, 914.)

Under Family Code section 760,[7] "'there is a general presumption that property acquired during marriage by either spouse other than by gift or inheritance is community property unless traceable to a separate property source. [Citation.] This is a rebuttable presumption affecting the burden of proof; hence it can be overcome by the party contesting community property

---

[7] Further undesignated statutory references are to the Family Code. Section 760 provides, "Except as otherwise provided by statute, all property, real or personal, wherever situated, acquired by a married person during the marriage while domiciled in this state is community property."

8

status.  [Citation.]  Since this general community property presumption is not a title presumption, virtually any credible evidence may be used to overcome it, including tracing the asset to a separate property source, showing an agreement or clear understanding between the parties regarding ownership status and presenting evidence the item was acquired as a gift.'" (*In re Marriage of Ciprari* (2019) 32 Cal.App.5th 83, 91; accord, *Trenk v. Soheili* (2020) 58 Cal.App.5th 1033, 1048 [Section 760 "does not contain any requirement that the source of funds used to purchase the property must be proved before the presumption applies."].)  "A spouse's claim that property acquired during a marriage is separate property must be proven by a preponderance of the evidence." (*In re Marriage of Valli, supra*, 58 Cal.4th at p. 1400; accord, *Trenk*, at p. 1045 [Section 760 "establishes a presumption affecting the burden of proof, which may be rebutted by the preponderance of the evidence."].)

B.   *Standard of Review*

"The existence and scope of a fiduciary duty is a question of law that we review de novo.  [Citation.]  However, 'the factual background against which we [answer that question] is a function of a particular case's procedural posture.'  [Citation.]  Thus, to the extent the court's decision below 'turned on the resolution of conflicts in the evidence or on factual inferences to be drawn from the evidence, we consider the evidence in the light most favorable to the trial court's ruling and review the trial court's factual determinations under the substantial evidence standard.'" (*In re Marriage of Kamgar* (2017) 18 Cal.App.5th 136, 144; accord, *In re Marriage of Bonds* (2000) 24 Cal.4th 1, 31 [""In reviewing the evidence on . . . appeal all conflicts must be resolved in favor of

the [prevailing party], and all legitimate and reasonable inferences indulged in [order] to uphold the [finding] if possible.""]; *In re Marriage of Rossi* (2001) 90 Cal.App.4th 34, 40 ["We review factual findings of the family court for substantial evidence, examining the evidence in the light most favorable to the prevailing party."].)  "'"Substantial evidence" is evidence of ponderable legal significance, evidence that is reasonable, credible and of solid value.'"  (*Estate of O'Connor* (2017) 16 Cal.App.5th 159, 163; accord, *In re Marriage of Burwell* (2013) 221 Cal.App.4th 1, 24-25, fn. 21.)

However, a different standard of review applies where the appellant had the burden of proof in the family court.  "'In the case where the trier of fact has expressly or implicitly concluded that the party with the burden of proof did not carry the burden and that party appeals, it is misleading to characterize the failure-of-proof issue as whether substantial evidence supports the judgment.'  [Citation.]  '[W]here the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law.'"  (*Juen v. Alain Pinel Realtors, Inc.* (2019) 32 Cal.App.5th 972, 978-979 (*Juen*); accord, *Almanor Lakeside Villas Owners Assn. v. Carson* (2016) 246 Cal.App.4th 761, 769; *Dreyer's Grand Ice Cream, Inc. v. County of Kern* (2013) 218 Cal.App.4th 828, 838 (*Dreyer's Grand Ice Cream*).)

"'Specifically, the question becomes whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding."'"  (*Juen, supra*, 32 Cal.App.5th at p. 979; accord, *Glovis America, Inc. v. County of Ventura* (2018) 28 Cal.App.5th 62, 71; *Dreyer's*

10

*Grand Ice Cream, supra*, 218 Cal.App.4th at p. 838.) "'[W]here . . . the judgment is against the party who has the burden of proof, it is almost impossible for him to prevail on appeal by arguing the evidence compels a judgment in his favor.'" (*Atkins v. City of Los Angeles* (2017) 8 Cal.App.5th 696, 734; accord, *Bookout v. State of California ex rel. Dept. of Transportation* (2010) 186 Cal.App.4th 1478, 1486.) "That is because unless the trial court makes specific findings of fact in favor of the losing [party], we presume the trial court found the [losing party's] evidence lacks sufficient weight and credibility to carry the burden of proof. [Citations.] We have no power on appeal to judge the credibility of witnesses or to reweigh the evidence." (*Bookout*, at p. 1486; accord, *Jennifer K. v. Shane K.* (2020) 47 Cal.App.5th 558, 579.)

C.     *The Evidence Presented by Abdou at Trial Does Not Compel the Conclusion United Was Not Community Property*

Abdou contends the family court erroneously characterized United and the 1303 Western property as community property, pointing to the testimony of his accounting expert, Jackie Adams-Ings, that "minimal community funds were available in the first year of the marriage." Thus, he argues, it was not plausible eight months into his marriage with Malak that he and Malak had accumulated $250,000 for the down payment. Instead, as Abdou testified, his mother wrote him a check for the down payment that he used to purchase the property for Moussa. Further, Gustavson confirmed that Moussa wrote a $250,000 check as a down payment to acquire the property.

These facts do not compel a conclusion the 1303 Western property was not community property. The trial court found

11

Abdou's testimony "lack[ed] reliability and credibility as to the true owner of United 1 and the source of the funds to purchase the real property at 1303 Western," noting Abdou was the only member of United at the time of the purchase, and Abdou transferred the property six years later to Moussa (shortly after Malak moved out in 2009), showing Moussa was never the owner of the property.  As to the $250,000 down payment, Abdou testified it was neither a gift nor a loan to him.  Although there was evidence Moussa made this payment, as the family court found, Abdou did not testify as to how the loan payments were made (for example, whether Moussa made any loan payments).  And it was United, not Moussa, that made the payments on the loan.  Abdou acknowledged he worked at the location and managed the property during the marriage, and Malak testified she worked at the gas station with Abdou every day during her pregnancy.  In addition, Abdou reported the purchase of the 1303 Western property on his 2004 personal tax return, and Abdou and Malak reported the rental income and depreciation from the property on their joint tax returns starting in 2005.  Moreover, when Abdou transferred his interest in United to Moussa in 2010 and 2011, Abdou and Malak reported the capital gains on their joint tax returns.

Further, it was undisputed that United was the record owner of the 1303 Western property.  Under Evidence Code section 662, "the owner of the legal title to property is presumed to be the owner of the full beneficial title," and the "presumption may only be rebutted by clear and convincing proof."  In addition, Abdou admitted United purchased the property eight months after he and Malak married, and thus the presumption under section 760 that the property was community property also

12

applied.  The family court found Abdou did not rebut either presumption.  Abdou failed to present evidence that compels the conclusion he rebutted the presumptions the 1303 Western property was owned by United and was community property. (*Juen, supra*, 32 Cal.App.5th at pp. 978-979; *Dreyer's Grand Ice Cream, supra*, 218 Cal.App.4th at p. 838.)

D.     *Substantial Evidence Supports the Family Court's Finding Abdou Breached his Fiduciary Duty*

Abdou contends even if United is community property, he did not breach his fiduciary duty because under section 1100, subdivision (d), he had primary management and control of United, and thus he was authorized unilaterally to transfer United and the 1303 Western property to Moussa.  This contention lacks merit.

Section 1100, subdivision (d), provides, "Except as provided in subdivisions (b) and (c), and in Section 1102, a spouse who is operating or managing a business or an interest in a business that is all or substantially all community personal property has the primary management and control of the business or interest. Primary management and control means that the managing spouse may act alone in all transactions but shall give prior written notice to the other spouse of any sale, lease, exchange, encumbrance, or other disposition of all or substantially all of the personal property used in the operation of the business (including personal property used for agricultural purposes), whether or not title to that property is held in the name of only one spouse. . . ."

Abdou ignores section 1100, subdivision (b), which provides, "A spouse may not make a gift of community personal property, or dispose of community personal property for less than

13

fair and reasonable value, without the written consent of the other spouse.  This subdivision does not apply to gifts mutually given by both spouses to third parties and to gifts given by one spouse to the other spouse."  There is no evidence Abdou gave written notice to Malak, or that Malak provided written consent to Abdou's transfer of United and the 1303 Western property to Moussa.  Nor is there evidence Abdou and Malak mutually transferred United to Moussa as a gift.  Rather, as the family court found, Abdou transferred his interest in United to Moussa in 2010 and 2011 after Malak initiated the first marital dissolution proceedings and moved out of the family home.  Further, the family court found credible Malak's testimony she did not know Abdou sold his interest in United and its asset to Moussa.

Notwithstanding Abdou's failure to provide Malak notice of the sale of United to Moussa, Abdou asserts the sale did not impair Malak's 50 percent interest in United and the 1303 Western property.  Without any citation to the record, Abdou claims "the property was upside down on its loan" at the time of the sale to Moussa.  But United purchased the property on September 7, 2004 for $1,438,372.  Abdou and Malak's joint tax returns reflected a rental cash flow of approximately $80,000 per year from the property, which was sufficient for United to make the loan payments.  Then, in 2010 and 2011, Abdou sold United to Moussa for $55,000, which was significantly less than the purchase price of the 1303 Western property.  Willard testified the property value was $2,107,00 as of February 16, 2012, and $3,160,000 as of December 12, 2018.  Substantial evidence therefore supports the family court's finding Abdou breached his

14

fiduciary duty by selling United without Malak's knowledge and for less than its fair market value.

E.     *The Family Court's Award Was Proper*

Abdou contends the family court erred by not staying its decision until Malak's quiet title action against United was resolved because a favorable result in the quiet title action could result in Malak receiving more than her 50 percent share in the property.  This argument is not persuasive.

On January 2, 2019, prior to trial in the marital dissolution action, Malak's attorney requested the family court "make a ruling on whether it is proper go forward today in light of the motion to consolidate and the complaint to quiet title."  Abdou could have joined in the request for a continuance, but he did not. The family court denied Malak's request because the dissolution action was filed in 2012 and the quiet title complaint was filed "a couple of weeks before trial."  After trial in the marital dissolution action, the superior court related the family law case and the quiet title action and then consolidated them on June 24, 2019.  Abdou's assertion that Malak could obtain a judgment awarding her another 50 percent interest in 1303 Western in the quiet title action is speculative given that the quiet title action will be heard as part of the consolidated proceeding.

15

## DISPOSITION

The judgment is affirmed.  Malak is to recover her costs on appeal.

FEUER, J.

We concur:

SEGAL, Acting P. J.

McCORMICK, J.[*]

---

[*] Judge of the Orange Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

16