Filed 11/20/20  Estate of Trikha CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| Estate of SATISH TRIKHA, Deceased. | |
| AVERY M. COOPER, as Administrator, etc., Petitioner and Respondent; SATISH TRIKHA, JR., et al., Petitioners and Appellants, v. SUCHITRA TRIKHA, JR., Objector and Appellant. | G056841 (Super. Ct. No. 30-2010-00354963) O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, David L. Belz, Judge.  Affirmed in part, reversed in part, and remanded.

1

Law Offices of Mohammad A. Fakhreddine, Mohammad A. Fakhreddine for Petitioners and Appellants Satish Trikha, Jr., and Sharmila Trikha.

Bidna & Keys, Richard D. Keys and Howard M. Bidna for Objector and Appellant Suchitra Trikha.

Avery M. Cooper for Petitioner and Respondent Avery M. Cooper, as Administrator of the Estate of Satish Trikha.

\*            \*            \*

Satish Trikha (Decedent) committed suicide while his marriage to Suchitra Trikha was pending dissolution.  His death led to a tortured decade-long dispute, with multiple lawsuits and appeals, between Decedent's children and Suchitra[1] over the ownership and proper disposition of various assets.

In the dispute's most recent chapter, the administrator of Decedent's Estate filed a petition under Probate Code section 850 (§ 850) to recover the Estate's half interest in a house in Laguna Niguel, certain financial accounts, and other assets held by Suchitra.  The trial court granted the petition in part, but otherwise found most of the disputed assets belong to Suchitra alone.  Two of Decedent's beneficiaries appeal, and Suchitra cross-appeals.  We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I.

### FACTS

Below we summarize the facts and proceedings relevant to the issues in this appeal.  Additional facts may be found in our prior decisions, *Estate of Trikha* (2013) 219 Cal.App.4th 791 (*Trikha I*) and *Estate of Trikha* (Dec. 27, 2018, No. G054909) [nonpub. opn.] (*Trikha II*).

---

[1]     Because many of the parties involved in these proceedings share the same last name, we refer to them by their first name.  We mean no disrespect.

2

Suchitra married Decedent in 1985.  During their marriage, they had two sons, Neel Trikha and Rishi Trikha.

In 1989, Suchitra and Decedent purchased a house on Kings Road in Laguna Niguel (Kings Road).  They used community property funds for the down payment, mortgage payments, property taxes, insurance, and improvements, and they lived there from 1990 onward.

The couple did not take title to the property in their names, however.  Instead, title was taken in the names of Decedent's brother, Sushil Trikha, and Decedent's father, Bhim Sain Trikha.  According to Suchitra, Decedent told her they could not take title in their own names because of certain "issues," but he promised her Sushil and Bhim would transfer title to them after a "short period."

That transfer never occurred.  Instead, Bhim quitclaimed Kings Road to Sushil in 1997.  Over the next decade, Suchitra repeatedly asked Sushil to transfer the title to her and Decedent, but he never did.

Decedent told Suchitra he would try to convince his brother Sushil to transfer title to them, but again, title was never transferred.  It is unclear from the record whether Decedent *tried* in good faith to convince Sushil to transfer title and was unsuccessful, or whether Decedent did not actually intend or try to recover title.  In hindsight, Suchitra believes Decedent never attempted to have his brother transfer title to Kings Road into their names.  In her words, Decedent was "conning" her and "pulling the wool over [her] eyes."

In 2008, Suchitra discovered Decedent was secretly communicating with his two adult children from his prior marriage, Satish Trikha, Jr. (Satish) and Sharmila Trikha.  She felt betrayed by Decedent's secretive conduct.  The couple separated a few months later, Suchitra petitioned for dissolution, and Decedent moved out of the Kings Road house.

3

Suchitra told Decedent they could reconcile if he ensured Kings Road was put in their or their children's names. She also told Sushil she would dismiss the dissolution proceedings if Decedent put all their assets in a trust for Neel and Rishi and if he disinherited Satish and Sharmila in writing. Decedent did not do so.

While the dissolution proceedings were pending, Decedent transferred $750,000 to his brother Sushil. The following month, Sushil sent a letter demanding that Suchitra vacate the Kings Road property for nonpayment of rent.

In an attempt to recover title to Kings Road as a community asset, Suchitra filed a motion to join Sushil as a party to the dissolution proceedings. Decedent opposed her motion, and he submitted two declarations avowing he and Suchitra never had an ownership interest in Kings Road, they were not in the chain of title for Kings Road, they merely "rent" the property from Sushil, and any payments he and Suchitra made toward the Kings Road mortgage or maintenance over the years were in lieu of rent.

In the dissolution proceedings, Suchitra identified Kings Road as a community asset in her Schedule of Assets and Debts. Decedent, by contrast, did not identify Kings Road as a community asset in his Schedule of Assets of Debts.

In October 2009, while the dissolution proceedings were still pending, Decedent executed a will leaving his estate to all four of his children (i.e., Neel, Rishi, Satish, and Sharmila), his two grandchildren, and Charles Arrieta, the son of his ex-girlfriend. The will omitted Suchitra. Three weeks later, Decedent committed suicide.[2] After his death, neither the original nor a duplicate original of his will could be located.

Suchitra filed a lawsuit (the Civil Case) against Sushil to recover her community property interest in Kings Road and the $750,000 Decedent had transferred to Sushil, among other assets. Her complaint asserted causes of action for imposition of a

---

[2] Decedent's death terminated the dissolution proceedings by operation of law. (See *In re Marriage of Hilke* (1992) 4 Cal.4th 215, 220 (*Hilke*) ["[t]he death of one of the spouses abates a cause of action for dissolution"].)

4

constructive trust, quiet title, conversion, and other claims. Sushil filed a cross-complaint against Suchitra for ejectment. Satish and Charles Arrieta, both named as beneficiaries in Decedent's will, were later joined in the Civil Case by stipulation.

Meanwhile, Satish and Charles filed a petition to probate a copy of Decedent's will. Suchitra opposed the petition and filed a will contest, alleging Decedent had revoked the will and his assets should pass by intestate succession, under which Suchitra would receive all their community property and one-third of Decedent's separate property.

In 2010, the Civil Case (the lawsuit between Suchitra and Sushil) was tried before Judge Michael Brenner. Ruling from the bench, Judge Brenner found Suchitra and Decedent were the "true owners" of the Kings Road property, Sushil was holding title in trust for them, and Suchitra and the Estate held title to the property as joint tenants. Although there was no written title to that effect, the court presumed Suchitra and Decedent would have taken title to Kings Road in joint tenancy "because that's how they held [another] property." The court also imposed a constructive trust on the $750,000 Decedent had transferred to Sushil, noting a creditor could perfect a claim against those funds in the probate case.

Shortly after Judge Brenner issued his oral ruling, Suchitra and Sushil settled the Civil Case, so the trial court never entered a judgment based on Judge Brenner's findings. As part of their settlement, Sushil agreed to transfer title to the Kings

5

Road property to Suchitra as her sole and separate property, and to transfer $750,000 in cash to the Estate.[3]

In 2011, Suchitra filed a creditor's claim against the Estate (the Creditor's Claim), alleging Decedent had breached his fiduciary duty to her by transferring $750,000 to Sushil, and seeking to recover that money, certain real estate properties, and other assets. The Creditor's Claim was stayed pending resolution of the will contest.

Suchitra's will contest was tried later that year. The trial court sustained the will contest and denied admission of the will to probate, finding Decedent had destroyed his will with the intent to revoke it.

Satish appealed the judgment, asserting the court misapplied Probate Code section 6124, which creates a presumption the testator destroyed the will with intent to revoke it where the will was last in the testator's possession, the testator was competent until death, and neither the will nor a duplicate original of the will can be found after the testator's death. We found there was substantial contrary evidence to negate the revocation presumption, and we reversed and remanded the matter for a new trial. (See *Trikha I, supra,* 219 Cal.App.4th 791.) The parties later settled the will contest, and Suchitra waived any objection to admitting the will into probate.[4]

---

[3] Several months later, Satish filed a motion to vacate Judge Brenner's oral holding that Kings Road would have been held by Decedent and Suchitra in joint tenancy, asserting title should have been taken as community property because Civil Code section 683 requires an express writing to create a joint tenancy. Judge Brenner denied the motion, noting the case had settled, the intervenors had not participated at trial, and their argument about Civil Code section 683 "never came up before the court" and it was "too bad we didn't hear that during the trial."

[4] The settlement agreement allowed Satish to request reimbursement from the Estate for his attorney fees incurred in the will contest. The trial court denied his motion without prejudice, finding it was premature. Satish later renewed his motion, which the court granted, but the court deferred payment until the time of final distribution. Satish appealed the deferral, and we affirmed, finding no abuse of discretion. (See *Trikha II, supra,* No. G056909 [nonpub. opn.].)

The will was admitted to probate in 2015, and Avery M. Cooper was appointed as the Estate administrator. Cooper filed a petition under section 850 and Family Code section 1101 (§ 1101), asserting the Estate has an interest in Kings Road and in about 50 other accounts and assets.[5] The operative first amended petition sought (1) declaratory relief that certain assets, including Kings Road, are community property and the Estate is a half owner of those assets; (2) an order transferring a one-half interest in Kings Road to the Estate; (3) an order transferring a one-half interest in certain financial accounts and personal property to the Estate; (4) a finding of unjust enrichment; (5) damages for breach of fiduciary duty; and (6) attorney fees and costs. Satish filed a response stating he "join[ed]" in the first amended petition "in whole."

While the section 850 petition was pending, Suchitra's Creditor's Claim against the Estate went to trial. The trial court found Decedent had breached his fiduciary duties to Suchitra by transferring $750,000 in community assets to Sushil without Suchitra's consent, and it awarded Suchitra half of the $750,000. Because there was insufficient evidence Decedent acted with malice, oppression, or fraud, the court declined to award Suchitra *Decedent's* share of those assets.

Cooper's section 850 petition went to trial in 2018. After taking the matter under submission, the trial court issued a 17-page "tentative decision" in which it granted the petition in part and denied it in part. Cooper filed objections to the tentative decision, and Satish filed objections and a request for statement of decision. Meanwhile, Suchitra filed a proposed judgment based on the court's tentative decision, which Cooper opposed as premature.

---

[5]     Section 850 allows a personal representative to file a petition to recover real or personal property held by another where the decedent had a claim to that property at the time of death. (§ 850, subd. (a)(2)(D).) Section 1101 allows a court to determine the rights of ownership to community property and to classify all property held by the parties to a marriage. (§ 1101, subd. (b).)

The following week, the trial court issued an 18-page "final decision" that largely mirrored its tentative ruling, and it overruled Satish's and Cooper's objections to the tentative ruling. The court simultaneously entered its judgment on the petition, using Suchitra's proposed judgment.

As we discuss in greater detail below, the trial court determined the Estate has a community property interest in certain accounts and awarded the Estate half the value of those assets as of the date of the couple's separation. However, the court found the Estate has no right, title, or interest in Kings Road and certain other assets, and further found Suchitra did not violate any fiduciary duty owed to the Estate.

Satish and Sharmila appeal from the judgment entered on the section 850 petition. Suchitra cross-appeals.

## II.

### DISCUSSION

A.  *Satish and Sharmila's Appeal*

1.  *Procedural Issues*

Satish and Sharmila first assert the trial court erred by not ruling on their and Cooper's objections to the tentative decision before issuing its final decision. They further contend the court erred by entering judgment less than 10 days after Suchitra filed her proposed judgment, and thus violated California Rule of Court, rule 3.1590(j), which gives any party "10 days after service of the proposed judgment [to] serve and file objections thereto."

They do not explain, however, how these alleged "errors" were prejudicial. We therefore conclude any clerical errors below were harmless. (See *F.P. v. Monier* (2017) 3 Cal.5th 1099, 1108 ["trial court's error in failing to issue a requested statement of decision is not reversible per se, but is subject to harmless error review"].)

8

2. *The Kings Road House*

a. *The Trial Court's Ruling*

Satish and Sharmila next challenge the trial court's ruling that the Estate has no interest in the Kings Road house. To recap the relevant facts, Decedent and Suchitra used community funds to purchase and maintain Kings Road, but title stayed in Sushil's name, despite Suchitra's requests that he transfer title to her and Decedent. During the dissolution proceedings, Suchitra asserted Kings Road is a community asset, while Decedent maintained Sushil owned Kings Road and therefore is *not* a community asset. After Decedent's death, Suchitra filed the Civil Case against Sushil to recover title to Kings Road. Suchitra obtained a favorable ruling from Judge Brenner and then settled with Sushil, who transferred Kings Road to her as her sole property as part of that settlement. Decedent's Estate then filed the section 850 petition to recover a community interest in Kings Road from Suchitra.

The trial court found Decedent had deceived Suchitra by falsely representing Sushil would transfer title to them, and Decedent never intended or attempted to correct the title. The court further found if title had been transferred to Decedent and Suchitra, title "would have been taken" in joint tenancy with right of survivorship and Kings Road "should be given status as a joint tenancy property"; it also concluded Satish (but not the Estate) was bound by Judge Brenner's oral finding in the Civil Case that title would have been taken in joint tenancy, citing the doctrine of collateral estoppel. Finally, the court found Decedent's fraud and deceit constituted a breach of his fiduciary duty to Suchitra. Citing section 1101, subdivision (h), which permits a court to award 100 percent of a community asset to a spouse when the other spouse has breached his fiduciary duty "within the ambit" of Civil Code section 3294, the court concluded Suchitra should have sole title to Kings Road, and Decedent's Estate has no right, title, or interest in the house.

9

Before addressing the parties' arguments, we note the trial court's analysis under section 1101 seems to be superfluous. If title to Kings Road were held in joint tenancy with right of survivorship, as the court held, Suchitra automatically would have succeeded to the entire property when Decedent died, without probate proceedings,[6] and Decedent's Estate would have no community interest in the property to award Suchitra under section 1101, subdivision (h).[7] That said, we must take the court's ruling as we find it, and therefore address the parties' arguments below.

       b.    *Joint Tenancy*

Satish and Sharmila first assert the trial court erred when it found "the Kings Road property should be given status as a joint tenancy property." In reaching this conclusion, the court reasoned: "Suchitra and [Decedent] had used joint tenancy with the Right of Survivorship as the form of title on other community property assets . . . [and] [t]he Kings Road property was their primary residence. . . . [¶] . . . It is entirely reasonable, based on the testimony of Suchitra in this case, for the Court to conclude, as did Judge Brenner, that had the title to the Kings Road house been transferred back to

---

[6]    "Spouses may hold property as joint tenants . . . or as community property . . . ." (Fam. Code, § 750.) When property is held in joint tenancy, if one joint tenant dies, the survivor automatically succeeds to the entire property, and probate is avoided. (See *Walters v. Boosinger* (2016) 2 Cal.App.5th 421, 434; *Dang v. Smith* (2010) 190 Cal.App.4th 646, 660.) When spouses hold property as community property, in contrast, "there is no automatic right of survivorship; half of the community property belongs to the surviving spouse, and the other half belongs to the decedent" and passes in accordance with his will, or in the absence of a will, by intestate succession. (*In re Brace* (2020) 9 Cal.5th 903, 917; see Prob. Code, § 100, subd. (a); cf. Civ. Code, § 682.1 [permitting spouses to hold title as community property with right of survivorship in instruments created in or after July 2001].) Although property held in joint tenancy is presumed to be community property upon dissolution (Fam. Code, § 2581), that presumption does not apply if one joint tenant spouse dies before entry of judgment of dissolution. (*Hilke, supra,* 4 Cal.4th at pp. 220-221.)

[7]    Section 1101, subdivision (h), applies only to community property. (*In re Marriage of Simmons* (2013) 215 Cal.App.4th 584, 593.)

10

[Decedent] and Suchitra that it would have been taken as a Joint Tenancy asset with right of survivorship."

Although we normally review the factual findings underpinning a trial court's property characterization for substantial evidence, we independently review the property characterization to the extent it presents a mixed question of law and fact that is predominantly one of law, as is the case here. (*In re Marriage of Rossin* (2009) 172 Cal.App.4th 725, 734.)

According to Satish and Sharmila, because Decedent and Suchitra never expressly declared in writing that Kings Road was to be held in joint tenancy, the trial court erred in finding Kings Road "should be given status as a joint tenancy property." We agree.

By statute, a joint tenancy is created only "when expressly declared in the will or transfer to be a joint tenancy." (Civ. Code, § 683, subd. (a); see *Estate of MacDonald* (1990) 51 Cal.3d 262, 271 ["joint tenancies can be created only by a writing"]; *Estate of Bibb* (2001) 87 Cal.App.4th 461, 467 [section 683 "requires that the creation of a joint tenancy be 'expressly declared'"].) Joint tenancies cannot be implied by conduct, so the fact Decedent and Suchitra held other assets in joint tenancy was irrelevant. In the absence of an express writing, the court had no legal basis to find Kings Road "should be given status as a joint tenancy property."

California's community property presumption bolsters our conclusion that Decedent and Suchitra would not have taken title to Kings Road in joint tenancy. Although Family Code section 750 permits spouses to hold property as joint tenants or as community property, Family Code section 760 provides that "except as otherwise provided by statute, all property, real or personal, wherever situated, acquired by a married person during the marriage while domiciled in this state is community property." In other words, property acquired during marriage is presumptively held as community property, not in joint tenancy.

11

There are several exceptions to the community property presumption. It does not apply to property acquired during marriage if that property is: (1) traceable to a separate property source; (2) acquired by gift, bequest, devise, or descent; or (3) earned or accumulated while the spouses are living separate and apart. (*In re Marriage of Valli* (2014) 58 Cal.4th 1396, 1400.) None of those exceptions apply here, however.

In short, even if we were to assume Sushil held title to Kings Road in trust for Suchitra and Decedent, as Judge Brenner held, and further assume title would have been transferred back to Suchitra and Decedent, in the absence of an express writing we have no grounds to presume Suchitra and Decedent would have taken title in joint tenancy. Consequently, the trial court erred in finding "the Kings Road property should be given status as a joint tenancy property."[8]

c.      *Section 1101*

Satish and Sharmila next challenge the trial court's application of section 1101, subdivision (h), and its finding the Estate has no interest in Kings Road because of Decedent's fraud. They contend Suchitra failed to prove Decedent breached his fiduciary duty to her, the court erred by shifting the burden to Cooper to disprove Decedent breached his fiduciary duty, and the application of section 1101, subdivision (h), unfairly penalizes Satish and Sharmila for Decedent's alleged misconduct.

Both during marriage and pending dissolution, spouses owe certain fiduciary duties to each other in managing community assets, and they may maintain a claim against one another for breaching that duty. (Fam. Code, §§ 721, 1100, 1101, subd.

---

[8]      Given our holding here, we need not address Satish's argument the trial court erred in giving Judge Brenner's oral findings on joint tenancy preclusive effect on Satish under the doctrine of collateral estoppel. And in any event, the court found "the Estate is not collaterally estopped by the ruling of Judge Brenner in the civil case" and therefore reached the merits of the joint tenancy issue. Thus, any error the court may have made in applying collateral estoppel did not matter because the court still reached the merits of the issue.

12

(a), 2102.)  Remedies for a spouse's breach of fiduciary duty normally include awarding the other spouse *50 percent* of any asset undisclosed or transferred in breach of the fiduciary duty.  (§ 1101, subd. (g).)  But when a breach of fiduciary duty "falls within the ambit of Section 3294 of the Civil Code" — that is, "where it is proven by clear and convincing evidence that the [spouse] has been guilty of oppression, fraud, or malice" (Civ. Code, § 3294) — the other spouse's remedies for that breach shall include an award of "*100 percent*" of the undisclosed or transferred asset.  (§ 1101, subd. (h); see, e.g., *In re Marriage of Rossi* (2001) 90 Cal.App.4th 34, 42 (*Rossi*) [wife's intentional concealment of lottery winnings constituted fraud under Civil Code section 3294, supporting award of all those winnings to husband].)  "The § 1101(h) threshold evidentiary burden is difficult to meet."  (Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2020) ¶ 8:625.5, p. 8-239.)

In finding Kings Road should go entirely to Suchitra under section 1101, subdivision (h), the trial court reasoned Decedent "was deceptive in what he told his wife, Suchitra.  His reassurances to her that the title to the Kings Road house would be changed back to reflect that [Decedent] and Suchitra were the owners was false.  There was no evidence that [Decedent] ever made an effort to correct the title."  The court also observed Decedent committed suicide knowing Kings Road was still not in their names, which "forced Suchitra to proceed in a civil case against Sushil and Bhim to recover her interest in the Kings Road house."

The trial court went on:  "[T]he evidence is clear and consistent with Family Code 1101(h) that [Decedent] intentionally misrepresented, deceived and concealed material facts from the time of the purchase of Kings Road up until his death with the intent to defraud Suchitra.  The actions of [Decedent] support a finding that he never intended to have title to Kings Road transferred back to himself and Suchitra as he had falsely promised her.  [Decedent] caused a community asset to be recorded outside of the community estate.  His failure to take action to correct the title and to bring the Kings

13

Road house back into the community estate was evidence of his intent to defraud the estate. Suchitra had asked her husband to correct the title but [Decedent] never did so. His actions or failure to act to correct the title speaks to [Decedent's] fraudulent intent." The court concluded: "As a result of the acts of fraud, deceit and concealment, the Court finds that the principles and provisions of Family Code 1101(h) should apply. The public policy principles and equity support that conclusion."

Although it did not expressly say so, by invoking section 1101, subdivision (h), the trial court evidently determined Suchitra had proved "by clear and convincing evidence" that Decedent was guilty of "oppression, fraud, or malice" as defined in Civil Code section 3294. In reviewing that finding, we must determine "whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 995-996 [clarifying how appellate courts are "to review the sufficiency of the evidence associated with a finding made by the trier of fact pursuant to the clear and convincing standard" and rejecting cases that held "the clear and convincing standard of proof has no bearing on appellate review"].) We "view the record in the light most favorable to the prevailing party below and give due deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*Id*. at p. 996.)

Applying those standards here, we conclude the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable Decedent breached his fiduciary duty in a way that amounted to "oppression, fraud, or malice" within the ambit of Civil Code section 3294. Suchitra testified Decedent told her when they purchased the house that title would be transferred to them after a "short period," and over the years, he told her he would try to get the house back from his brother. Despite those assurances, title always remained in Sushil's name, although it is unclear from the record whether Decedent tried in good faith to convince

14

Sushil to transfer title and was unsuccessful, or whether Decedent did not actually try to recover title. Whatever his intentions might have been during their marriage, however, Decedent's intentions became clear during the dissolution proceedings. In those proceedings, Decedent did not identify Kings Road as a community asset in his Schedule of Assets of Debts, he opposed Suchitra's efforts to join Sushil as a party to the dissolution proceedings, and he filed multiple declarations avowing he and Suchitra never had an ownership interest in Kings Road, they are not in the chain of title for Kings Road, and they merely "rent" the property from Sushil.

In short, after promising Suchitra the family home purchased with community funds would be transferred to their names, and after causing the community asset to be recorded outside the community estate, Decedent took affirmative steps during the dissolution proceedings to prevent that transfer from ever occurring. This evidence supports the trial court's finding that Decedent acted with oppression, fraud, or malice in breaching his fiduciary duty to Suchitra, and thus supports awarding Kings Road to Suchitra under section 1101, subdivision (h).

We reject Satish and Sharmila's argument that the application of section 1101, subdivision (h), unfairly penalizes them for Decedent's alleged misconduct by depriving them, as beneficiaries of the Estate, of an interest in Kings Road. Section 1101's purpose is to enforce the fiduciary obligations of spouses to one another (see *Rossi, supra*, 90 Cal.App.4th at p. 43), and the trial court's ruling did just that. If the divorce had been finalized during his lifetime, Satish and Sharmila would have been subject to the same outcome, and the result should not change simply because of Decedent's suicide while the dissolution proceedings were pending. (See also *Estate of McGuigan* (2000) 83 Cal.App.4th 639, 653, fn.11 [administrator "'stands in the shoes of, and for the purposes of . . . litigation possesses the same but no greater rights than'" the decedent].)

15

We therefore affirm the court's denial of Cooper's section 850 petition as to Kings Road.

3.    *The Bristol Park Investment*

Satish and Sharmila next contend the trial court committed reversible error when it found the Estate has no interest in Bristol Park Investment Group V, LP (BPIG V), a real estate investment made through the medical group Suchitra worked for.

Suchitra testified she wrote a $10,000 check in November 2001 to fund the investment, but she could not locate any written documents showing how title was taken. The trial court found BPIG V "was a community property asset," and Suchitra and Decedent "would have" taken title to BPIG V as a joint tenancy with right of survivorship; the court made this assumption because Decedent and Suchitra had used that form of title for a different Bristol Park investment. Thus, concluded the court, the couple's interest in BPIG V passed automatically to Suchitra upon Decedent's death, and the Estate had no interest in BPIG V.

Satish and Sharmila assert the BPIG V investment cannot be held in joint tenancy in the absence of an express writing declaring an asset is held in joint tenancy. We agree. As noted, a joint tenancy cannot be created by implication; it must be express. (Civ. Code, § 683.) In the absence of an express writing, the trial court had no legal basis to assume BPIG V was taken in joint tenancy. The portion of the judgment declaring the Estate has no right, title, or interest in BPIG V is therefore reversed and remanded.

4.    *The Bank of America Account*

Satish and Sharmila next challenge the trial court's finding that the Estate has no interest to the funds in a Bank of America account ending in 2092. Satish and Sharmila contend substantial evidence supports the Estate's community claim to those funds, and Suchitra concedes as much. We therefore reverse and remand that portion of the judgment.

16

5. *Fraud by Suchitra*

Satish and Sharmila next challenge the trial court's finding that Suchitra was not subject to sanctions under section 1101. The court found, without discussion, Suchitra did not breach her fiduciary duty to Decedent or the Estate. We review the court's factual findings for substantial evidence, examining the evidence in the light most favorable to the prevailing party. (*Rossi*, *supra*, 90 Cal.App.4th at p. 40.)

Satish and Sharmila argue Suchitra breached her fiduciary duties to Decedent's Estate by refusing to account for community funds in the financial accounts in her name during the proceedings below, and by taking title to Kings Road in her name alone after settling the Civil Case with Sushil. We disagree.

As Suchitra correctly observes, all of the conduct at issue occurred *after* Decedent died, and thus cannot be used to support a claim for breach of fiduciary duty under section 1101. Although a spouse's fiduciary duties to her spouse continue after separation in anticipation of dissolution until the date of distribution (Fam. Code, § 2102), Satish and Sharmila cite no authority that those fiduciary duties continue after the other spouse dies, or that the spouse owes those duties to the deceased spouse's estate. We therefore affirm that portion of the judgment.

6. *Jewelry*

In its judgment, the trial court determined the Estate has no right, title, or interest in certain "[m]iscellaneous jewelry." However, it also found "[t]he following items, *which have not been in the possession, custody or control of Suchitra Trikha since at least before [Decedent's] death*, were the separate property of [Decedent]: (1) Satish Black Diamond Ring [Item 2]; (2) Satish's Diamond Rings [Item 22]; and (3) Satish Diamond Rings [Item 39]." (Italics added.) Satish and Sharmila challenge the italicized language stating those three items are not in Suchitra's possession. They assert that language does not appear in the court's final decision and is contradicted by Suchitra's own testimony.

17

Substantial evidence supports the language in the judgment that Suchitra has not possessed those items "since at least before" Decedent's death. Suchitra testified at trial that Items 2, 22, and 39 were obtained during their marriage, and she returned all the jewelry "obtained during the marriage" to Decedent after she petitioned for dissolution. At deposition, Suchitra also testified Decedent "has" Item 2, his black diamond ring. Because substantial evidence supports the language in question, we affirm that portion of the judgment.

B.      *Suchitra's Cross-Appeal*

      1.      *The Statute of Limitations*

Turning to Suchitra's cross-appeal, we next consider the trial court's ruling that the Estate has a community property interest in 11 financial accounts. Suchitra contends Cooper's petition on those accounts is time-barred by Probate Code sections 13561, subdivision (b), and 13562, subdivision (e). The court rejected her statute of limitations argument, first in overruling Suchitra's demurrer, then in denying her motion for judgment on the pleadings, and again in its final decision. We review Suchitra's statute of limitations argument de novo. (*Sahadi v. Scheaffer* (2007) 155 Cal.App.4th 704, 714.)

Probate Code section 13561 makes a surviving spouse liable to a decedent's beneficiary if the decedent's property is in her possession at the time of the decedent's death, but the action must be brought within three years of the decedent's death. Probate Code section 13562 makes the surviving spouse liable for restitution to the decedent's estate if the surviving spouse still has the decedent's property, but again, the action must be brought within three years of the decedent's death. According to Suchitra, Cooper's section 850 petition is time-barred under these sections because it was brought more than three years after Decedent's death.

We disagree. The three-year limitations periods in Probate Code sections 13561 and 13562 do not apply to a section 850 petition. As one leading treatise notes,

18

actions under section 13561 or 13562 are "forever barred three years after the death of the decedent, without tolling for any reason. [Citation.] *The statute of limitations for a Prob Code § 850 petition, on the other hand, is determined by the underlying right asserted in the petition*; that is, the same statute of limitations that would apply had an ordinary civil action been brought." (Matthew Bender Practice Guide: California Trust Litigation, ¶ 7.08[4] (2020), italics added; see *id.* ¶ 7.12 [collecting statutes of limitations applicable to actions underlying a section 850 petition]; Ross & Cohen, Cal. Practice Guide: Probate (The Rutter Group 2020), ¶ 15:588, p. 15-159 ["The claim underlying the § 850 petition is subject to the same statute of limitations that would apply had an ordinary ('non-§ 850') civil suit been brought"]; see, e.g., *Estate of Young* (2008) 160 Cal.App.4th 62, 77 [action by administrator of estate to recover real property was governed by limitations period for fraud].) Because Cooper did not elect to administer his claims pursuant to Probate Code sections 13561 and 13562, the statutes of limitations in those two sections are inapplicable.[9]

### 2. *The Date of Valuation Used for the Financial Accounts*

Suchitra next challenges the trial court's decision to award the Estate a community interest in certain accounts valued at "the date of separation." She contends the court erred in using the date of separation to value the accounts, and the court should have instead used the values as of Decedent's death.

The date of valuation matters because the collective value of the accounts decreased by about $200,000 between the date of separation and date of death. Suchitra testified most of that money "was used to pay the attorneys' fees," although it is unclear from the record whether she was referring to her own attorney fees or Decedent's.

---

[9] Given our holding here, we need not address Satish and Sharmila's contention that Suchitra waived her statute of limitations defense by failing to raise Probate Code sections 13561 and 13562 as an affirmative defense in her response to the petition.

In using the couple's date of separation for valuation, the trial court noted "[t]here was little evidence provided" about the accounts, but "[f]rom the date of separation each party [was] subject to the standards of F[amily] C[ode section] 721 and is responsible to provide a full and accurate disclosure of those assets." Thus, although it did not expressly say so, it appears the trial court used the date of separation at least in part because of Suchitra's failure to account for the decreased balances. We review the court's use of the date of separation for valuation under the abuse of discretion standard. (See *Estates of Collins & Flowers* (2012) 205 Cal.App.4th 1238, 1246; *In re Marriage of Honer* (2015) 236 Cal.App.4th 687, 693-694.)

Suchitra contends the trial court should have used the date of death instead. She notes Decedent's death automatically terminated the dissolution proceedings. (*In re Marriage of Lisi* (1995) 39 Cal.App.4th 1573, 1575 ["death of one party before entry of an order dissolving the marriage abates the [dissolution] action"].) Because she and Decedent were therefore still married when he died, she asserts half their community assets belonged to Decedent at his death, and the value of his Estate's share in those community assets should be fixed at the time of death. (See Prob. Code, § 100, subd. (a); *Patrick v. Alacer Corp.* (2011) 201 Cal.App.4th 1326, 1341 [surviving spouse's community interest in increased value of deceased husband's separate property stock was properly valued at date of death].)

Satish, Sharmila, and Cooper argue any postseparation earnings on the accounts are separate property, not community property (Fam. Code, § 771), which weighs in favor of using the date of separation. They further argue the accounts decreased in value after the date of separation because Suchitra used the accounts to pay her separate expenses.

On balance, in the absence of any published case on point, and given the significant decrease in the account values between the date of separation and the date of death, Suchitra's failure to provide an accounting for how that money was spent, and the

20

overall lack of evidence presented about the accounts, we conclude the trial court did not abuse its discretion in using the date of separation to value the accounts.  We therefore affirm that portion of the judgment.

III.

DISPOSITION

We reverse and remand those portions of the judgment declaring the Estate has no right, title, or interest in BPIG V and in the Bank of America account ending in 2092.  The judgment is otherwise affirmed.  In the interests of justice, each party shall bear his or her own costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(5).)


ARONSON, ACTING P. J.

WE CONCUR:


IKOLA, J.


GOETHALS, J.

21